IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANK B. FUHRER WHOLESALE          )
COMPANY,                           )
                Plaintiff,              )
                                        )
     vs                            )
                                        )          Civil Action No.  13-1155
MILLERCOORS LLC, COORS             )
BREWING COMPANY and                )
MOLSON COORS BREWING               )
COMPANY,                           )
                Defendants.             )

## MEMORANDUM OPINION

ROBERT C. MITCHELL, Magistrate Judge.

## I.      INTRODUCTION

Presently before the court is Defendants' MillerCoors LLC, Coors Brewing Company and Molson Coors Brewing Company (collectively "Defendants") motion to dismiss Plaintiff's, Frank B. Fuhrer Wholesale Company's ("Fuhrer"), amended complaint.  For the following reasons, Defendants' motion is granted.

## II.      BACKGROUND

Plaintiff is a western Pennsylvania beer wholesaler who distributes the Defendants' products, as well as beer products from Defendants' competitor, Anheuser-Busch.  On or about January 1, 1997, Plaintiff and Defendant, Coors Brewing Company, executed a distributorship agreement that is currently still in effect. Compl. [ECF No. 22] at ¶ 23.  Under the Agreement, Plaintiff is the exclusive distributer of certain Coors products in a nine-county area including the

Pittsburgh metropolitan area.[1]  *Id.* at ¶ 24.  The Agreement allows Coors to add products to the list of those which Plaintiff already has exclusive distributorship rights.  This provision states:

> This Agreement sets forth the respective obligations of Coors and Distributor [Plaintiff] regarding the sale by Coors to Distributor of only those Coors products listed on Exhibit A (the "Products") and Distributor's resale of the Products to retailers.  Coors may amend Exhibit A from time to time to add new products.

Distributorship Agreement [ECF No. 22-1] at § 1.1.    Since the Agreement was entered into, Defendants have given Plaintiff the rights to new Coors products. Compl. [ECF No. 1] at ¶ 26. The Agreement also grants Plaintiff the right to sell other beer manufacturer's products.  It states:

> Distributor may, without Coors' consent, acquire the rights to sell other brands of beer or other beverages in the Market Area or elsewhere, provided the transaction by which such brands are acquired does not involve a transaction requiring Coors' consent or review under [subsequent sections of the Agreement].   The acquisition of such other brands shall not reduce Distributor's obligations to Coors.

Distributorship Agreement [ECF No. 22-1] at § 8.4.  The Agreement also imposes a duty of good faith and fair dealing for the "implementation, performance and enforcement of the terms of" the Agreement. *Id.* at § 1.2.

In or about 2008, Coors Brewing Company and Miller Brewing Company created MillerCoors as a joint venture. Compl. [ECF No. 1] at ¶ 2.  Coors Brewing Company then transferred all of its existing distributorship agreements to the new MillerCoors, including the Agreement with Plaintiff. *Id.* at ¶ 54.

In the fall of 2012, MillerCoors introduced a new craft/specialty beer called Batch 19.  *Id.* at ¶ 29.  MillerCoors did not give distributorship rights to Plaintiff for Batch 19, but instead gave

---

[1]    At the time the Agreement was executed, Plaintiff was awarded distributorship rights to the following brands: Coors, Coors Artic Ice, Coors Artic Ice Light, Coors Cutter, Coors Dry, Coors Extra Gold, Coors Light, Herman Joseph's, Keystone, Keystone Amber Light, Keystone Dry, Keystone Ice, Keystone Light, and Zima. *See* Brand Portfolio [ECF No. 22-1] at 22.

it to other wholesaler/distributors in Plaintiff's territory. *Id.* at ¶ 30. In 2013, MillerCoors introduced two more craft/specialty beers, Third Shift and Redd's Apple Ale. *Id.* at ¶ 31. MillerCoors did not give Plaintiff distributorship rights for these brands, but again awarded the exclusive right to sell both of these new products to other wholesaler/distributors in Plaintiff's territory. *Id.*

Plaintiff confronted MillerCoors about not receiving the distributorship rights to these new products and was told by Defendants that they would not assign any new specialty or craft beers to Plaintiff because it sells products of its competitor, Anheuser-Busch. *Id.* at ¶ 32. On or about May 10, 2013, the parties had a meeting concerning the distribution rights of the new beer brands. *Id.* at ¶¶ 35-40. At this meeting, MillerCoors indicated that Plaintiff would be given the opportunity to receive new craft/specialty beers if it created a sales director position dedicated exclusively to all MillerCoors products. *Id.* at ¶ 38. Also during the meeting, MillerCoors admitted that Plaintiff should have received the distribution rights for Batch 19, but it had already given exclusive distribution rights to other wholesalers. *Id.* at ¶ 40. MillerCoors indicated it would not object to Plaintiff attempting to purchase those rights from the respective wholesalers. *Id.*

On or about June 4, 2013, MillerCoors' general counsel sent Plaintiff an email memorializing and expounding upon the proposal discussed at the meeting regarding Plaintiff's acquisition of Defendants' new specialty/craft beer brands. *Id.* at ¶¶ 41-42. The conditions required Plaintiff to create a new corporate entity dedicated exclusively to MillerCoors products in which a voting stock holder of Fuhrer could hold no more than 49.9% of the new entities' voting stock, the majority of the directors on the new entities' board could not be members of Plaintiff's board of directors and the new entity must have a chief financial officer or controller

dedicated exclusively to the new entity. *Id*. at ¶¶ 42-44.

The instant action was removed to this court on August 9, 2013. In responding to Defendants' first motion to dismiss, Plaintiff filed an amended complaint on September 16, 2013 bringing five causes of action against Defendants. First, Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201, *et seq*., to have this Court declare that

> Defendants may not require [Plaintiff] to assent to a condition limiting [Plaintiff's] right to sell the product of other beer manufacturers in order to receive the right to sell craft/specialty beers, including but not limited to a condition requiring [Plaintiff] to create a separate corporate entity devoted exclusively to MillerCoors products.

Compl. [ECF No. 1] at ¶ 51. Second, Plaintiff brings a breach of contract claim alleging that the Agreement granted Plaintiff the right to sell other beer manufacturers' products and the Agreement was subject to the duty of good faith and fair dealing. *Id*. at ¶ 56-57. Plaintiff claims that

> Defendants have materially breached the Distributorship Agreement by (a) requiring [Plaintiff] to create an identity devoted exclusively to selling the products of MillerCoors in order to receive the right to sell new craft/specialty beers; and (b) refusing to grant Fuhrer the right to sell new craft/specialty beer because [Plaintiffs] sells the products of other manufacturers.

*Id*. at ¶ 59. Third, Plaintiff alleges a violation of the Pennsylvania Liquor Code ("Liquor Code") under 47 P.S. § 4-492(21). Plaintiff claims that by Defendants not giving Plaintiff the distribution rights for specialty/craft beers unless it creates a separate corporate entity to distribute these products due to the fact that Plaintiff also sells Anheuser-Busch products, is a violation of the Liquor Code. *Id*. at ¶ 62-63. Specifically, Plaintiff claims that under the Liquor Code because "no brewer may 'require a distributor or importing distributor to assent to any condition, stipulation or provision limiting the distributor or importing distributor in his right to

sell the products of any other manufacturer[,]" Defendants have violated 47 P.S. § 4-492(21). *Id.* (quoting 47 P.S. § 4-492(21)). Fourth, Plaintiff brings a claim for unreasonable restraint of trade and alleges that Defendants' demand to create a new corporate entity imposes illegal and unreasonable conditions on Plaintiff and are greater than what is necessary to protect Defendants' interests, impose undue hardship on Plaintiff and artificially restrict market competition in Pennsylvania. *Id.* at ¶¶ 70-71. Lastly, Plaintiff brings a claim against Defendants for the tortious interference with existing contract. Plaintiff claims that because MillerCoors stated that Anheuser-Busch was its main competitor and that to be considered for distribution rights, Plaintiff would have to create a separate entity that did not distribute or sell Anheuser-Busch products, and because Plaintiff maintains a contractual relationship with Anheuser-Busch, MillerCoors has tortuously interfered with their existing contract. *Id.* at ¶78. Plaintiff also seeks a preliminary injunction prohibiting MillerCoors from using its sale of Anheuser-Busch products as a reason for denying Plaintiff distributorship rights over new specialty/craft beers. *Id.* at ¶¶ 66, 75, 81. Defendants move to dismiss all of Plaintiffs claims and each of Defendants' argument will be addressed herein.

### III.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the parties to the claim are diverse and the amount in controversy exceeds the jurisdictional amount. Additionally, all parties have consented to proceed before a United States Magistrate Judge and this court has the authority to decide dispositive motions and to enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

### IV.    STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), arguing that this court does not have jurisdiction over the claim for

declaratory relief, and Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has otherwise failed to state a claim upon which relief can be granted. Because Plaintiff's claims fail under Rule 12(b)(6), the court dismisses Plaintiff's claims for injunctive and declaratory relief as moot and will not determine these points under Rule 12(b)(1).

a. Federal Rule of Civil Procedure 12(b)(6)

Generally, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. For a complaint to survive a Rule 12(b)(6) challenge, it must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). A court in determining whether a complaint meets this standard must read the complaint in the light most favorable to the plaintiff and all well-pleaded facts must be taken as true. *Id.* at 677. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (U.S. 2007)). That a court must accept all factual allegations in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) (the court is not "bound to accept as true a legal conclusion couched as a factual allegation")). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Doing so "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, n.3).

Along with the well-pleaded factual allegations of a complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Pension Trust Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, -- F.3d --, --, 2013 WL 5184064, at *7 (3d Cir. Sept. 17, 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994)).

## V.    DISCUSSION

### a.    Defendants Coors Brewing Company and Molson Coors Brewing Company

Defendants claim that Plaintiff has alleged no facts against Coors Brewing Company or Molson Coors Brewing Company that would allow the claims to survive a Rule 12(b)(6) motion. *See* Br. in Supp. of Mot. to Dismiss [ECF No. 26] at 6-7.

Plaintiff supports including these Defendants in the present action because "[i]n the event that Coors Brewing Company or its parent company Molson Coors Brewing retained any rights or obligations under the Distribution Agreement, Plaintiff asserts [the breach of contract claim] against those Defendants as well as against Defendant MillerCoors." Compl. [ECF No. 1] at ¶ 10.

Plaintiff's contention is completely devoid of any factual basis that would allow this Court to draw the inference that Coors Brewing Company or Molson Brewing Company is liable under the Agreement. Accordingly, Defendants' motion to dismiss Defendants Coors Brewing Company and Molson Brewing Company is granted and Plaintiff's claims against these Defendants are dismissed.

### b.    Violation of 47 P.S. § 4-492(21)

MillerCoors argues that Plaintiff's claim under 47 P.S. § 4-492(21) should be dismissed because this section of the Pennsylvania Liquor Code does not give Plaintiff a private right of

action. Br. in Supp. of Mot. to Dismiss [ECF No. 26] at 11-14. It further argues that to the extent

that 47 P.S. § 4-492(21) does establish a private cause of action, the conduct that it is accused of

does not violate this section. *Id*.

Plaintiff responds that the cases relied upon by MillerCoors are distinguishable from the

instant case and the court should not rely upon them to support a holding that section 4-492(21)

does not create a private right of action. Br. in Op. of Mot. to Dismiss [ECF No. 30] at 16.

The Pennsylvania Liquor Code makes it unlawful

> "[f]or any manufacturer to compel or attempt to compel any distributor or importing distributor . . . to do any illegal act by any means whatsoever including, but not limited to, threatening to amend, cancel, terminate, rescind or refuse to renew any agreement existing between the manufacturer and the distributor or importing distributor, or to require a distributor or importing distributor to assent to any condition, stipulation or provision limiting the distributor or importing distributor in his right to sell the products of any other manufacturer."

47 P.S. § 4-492(21).

Under Pennsylvania law, to determine whether a criminal statute implies a private right

of action, the court must consider (1) whether plaintiff is among the class for whose particular

benefit the statute was enacted; (2) whether there is an explicit or implicit indication of

legislative intent to create or deny a private cause of action; and (3) whether "such a remedy is

consistent with the underlying purposes of the legislative scheme to imply such a remedy."

*D'Errico v. DeFazio*, 763 A.2d 424, 429 (Pa. Super. Ct. 2000) (citing *Alfred M. Lutheran Dist.*,

*Inc. v. A.P. Wielersbachers*, 650 A.2d 83, 87 (Pa. Super. Ct. 1994) (citations omitted)).

Generally, a criminal statute does not give rise to civil liability. *See Brett v. Brett*, 503 Fed.

App'x 130, 132 (3d Cir. 2012) (applying federal criminal statute) (non-precedential); *Concert v.*

*Luzerne Cnty. Children and Youth Servs.*, 2008 WL 4753709, at *3 (M.D.Pa. Oct. 29, 2008)

("Criminal statutes do not generally provide a private cause of action nor basis for civil liability.").

In addressing whether section 4-492(21) of the Liquor Code, a criminal statute, created a private cause of action, another court in finding that the section does not create a private cause of action has broadly explained:

> [The] Liquor Code, taken as a whole, does not suggest, either explicitly or implicitly, that the General Assembly of Pennsylvania intended to give an aggrieved party the right to bring a private action under the statute to enforce the Code's provisions or recover damages. To the contrary, the General Assembly created the Pennsylvania Liquor Control Board and the Bureau of Liquor Control Enforcement of the Pennsylvania State Police in order to effectuate and enforce the Code. Moreover, the . . . Pennsylvania legislature has "aptly demonstrated its ability to create a private statutory cause of action whenever it has chosen to do so." In short, the Superior Court [of Pennsylvania] concluded that:
>
>> "[t]o extend the rights and remedies granted by the statute, when the General Assembly has not chosen to do so, would disrupt the balance which the General Assembly has sought to create between the rights and responsibilities which manufacturers, and distributors or importing distributors owe to each other. Consideration of this factor thus does not persuade us that a private statutory cause of action should be implied under § 4-492(2)(i)."
>
> . . .
>
> [T]he Court believes that the analysis which lead to this conclusion applies to section[] … 4-492 . . . (21).

*L&M Beverage Co. v. Guinness Import Co*., 1995 WL 771113, at *3 (E.D.Pa. Dec. 29, 1995) (quoting *Lutheran Distributors*, 650 A.2d at 90 (internal citations omitted)).

The same reasoning applies here. The Liquor Code is silent as to whether it creates an overarching private cause of action for violations of the Code. However, the Pennsylvania Legislature created the Pennsylvania Liquor Control Board and the Bureau of Liquor Control

Enforcement of the Pennsylvania State Police to investigate, enforce, determine violations and impose fines and/or criminal sanctions under the Code. The Liquor Code was enacted by the state's legislature as an exercise of its police power "for the protection of the public welfare, health, peace and morals of the people of the Commonwealth[,]" not to subject violators to civil liability of private causes of action for such violations. 47 P.S. § 1-104(a). Moreover, the legislature gave the Pennsylvania State Police Bureau of Liquor Control Enforcement the sole duty to "investigate and issue citations for any violations of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or any regulations of the board adopted pursuant to such laws or any violation of any laws of this Commonwealth." 47 P.S. § 2-211(a)(4). Likewise, the legislature has explicitly created private rights of action for violations of other sections of the Liquor Code, none of which apply here. *See* 47 P.S. § 4-431(d) (actions to enjoin the modification, rescission, cancellation or termination of a franchise or distribution agreement); 47 P.S. § 6-602 (forfeiture actions which allow illegally possessed or manufactured property to be forfeited to the Commonwealth); and 47 P.S. § 6-611 (actions relating to the abatement of a common nuisance). Had the legislature intended to create a private right of action for section 4-492(21), it would have explicitly set forth such a remedy as it had done for other provisions of the Liquor Code.

Based on the foregoing, section 4-492(21) does not create a private right of action. As such, it would be improper for this Court to determine whether MillerCoors violated this section of the Liquor Code because doing so "would disrupt the balance which the General Assembly has sought to create between the rights and responsibilities which manufacturers, and distributors or importing distributors owe to each other[.]" *L&M Beverage Co.*, 1995 WL 771113, at *3. It would also be futile to allow Plaintiff to amend its complaint with respect to bringing a civil

cause of action against MillerCoors under this section. Accordingly, Defendants' motion to dismiss Plaintiff's claim under 47 P.S. § 4-492(21) is granted and this claim is dismissed with prejudice.

c. Breach of Contract

MillerCoors next argues that the breach of contract claim should be dismissed because Plaintiff has failed to allege that it breached any provisions of the Agreement. Br. in Supp. of Mot. to Dismiss [ECF No. 26] at 7. MillerCoors argues that a breach of good faith and fair dealing is not a separate cause of action under Pennsylvania law and it has not breached the Distribution Agreement's provision allowing Plaintiff to sell other manufacturers' brands. *Id.* Further, MillerCoors argues that its allegedly prohibited conduct of "(1) proposing that Plaintiff create a separate entity to distribute the existing MillerCoors and new craft beer brands, and (2) refusing to grant Plaintiff the right to sell the new brands because they are also a distributor of [Anheuser-Busch] products" in no way breaches the Agreement. *Id.* at 9. MillerCoors points out that it has the express right to choose which distributor receives its new brands, and Plaintiff has no contractual right to receive these particular brands. *Id.* at 10. Moreover, "none of the craft brands at issue in this case are within the scope of the Agreement. . . . [U]nder the express terms of the … Agreement, Plaintiff has no contractual right to receive these particular brands and MillerCoors is free to assign these brands to any distributor." *Id.* at 11.

Plaintiff argues that 47 P.S. § 4-492(21) was a substantive law when the parties entered into the Distribution Agreement and the section is implicitly incorporated into the contract. Br. in Op. of Mot. to Dismiss [ECF No. 30] at 11. Plaintiff argues that because MillerCoors allegedly violated section 4-492(21), and it became an implicit term of the distribution agreement, MillerCoors has also breached the agreement. *Id.* Additionally or alternatively, Plaintiff argues

11

that MillerCoors has breached the duty of good faith and fair dealing by violating section 4-492(21). *Id.*

To state a claim for a breach of contract under Pennsylvania law, the plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of the duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (applying Pennsylvania law). Plaintiff relies on the principle of contract interpretation that laws which exist at the time a contract is entered into become part of the contract, as fully as if they would have been expressly referred to or incorporated into the contract's terms. *See Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991). However, if the statute sought to be incorporated into the contract does not create a private right of action for a plaintiff directly under the statute, it cannot form the basis for a breach of contract claim. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66 (3d Cir. 2008) (dismissing breach of contract claims where the underlying statute relied upon did not create a private right of action).

The same reasoning applies here. Because section 4-492(21) does not create a private right of action, Plaintiff cannot rely upon it as a basis for a breach of the Distribution Agreement. To do so would directly contradict the Pennsylvania legislature that decidedly did not directly create a private right of action, and the court's determination that the state legislature did not intend to imply a private right of action under section 4-492(21).

Plaintiff's additional or alternative breach of contract claim is premised upon that by violating section 4-492(21), MillerCoors has also violated the duty of good faith and fair dealing.

"Courts have utilized the good faith duty as an interpretative tool to determine the parties' justifiable expectations in the context of a breach of contract action, but that duty is not divorced

from the specific clauses of the contract and cannot be used to override an express contractual term." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (applying Pennsylvania law) (citations omitted). The duty of good faith and fair dealing is breached if a party "evades the spirit of the bargain, acts with a lack of diligence, willfully renders imperfect performance, abuses the power to specify terms, interferes with or fails to cooperate in the other party's performance, or exercises contractually authorized discretion in an unreasonable manner." *Donaldson v. Informatica Corp.*, 2009 WL 4248819, at *11 (W.D.Pa. Nov. 30, 2009) (quoting *Berks Mut. Leasing Corp. v. Travelers Prop. Cas.*, 2002 WL 31761419, at *3 (E.D.Pa. Dec. 9, 2002)). In determining whether the duty of good faith and fair dealing applies as a cause of action, a court "must proceed with caution or else 'the doctrine could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'" *Donaldson*, 2009 WL 4248819, at *11 (quoting *Northview Motors*, 227 F.3d at 92).

Here, the Distribution Agreement permits, not requires, MillerCoors to amend the Distribution Agreement to give Plaintiff the distribution rights to its new beer brands. MillerCoors was under no obligation to grant Plaintiff distribution rights or the right of first refusal to MillerCoors' new craft/specialty beer brands. To read into the Agreement that MillerCoors was under the obligation to offer distribution rights of new beer brands under the good faith and fair dealing provision would override the Distribution Agreement's express terms: *i.e.*, that MillerCoors "may" grant Plaintiff distribution rights to add new products. *See Donaldson*, 2009 WL 4348819, at *11 (refusing to apply the duty of good faith and fair dealing where it would convert a permissive contract provision into a mandatory provision); *Keosseian v.*

*Bank of America*, 2012 WL 458470, at *1 (D.N.J. Feb. 10, 2012) (dismissing breach of contract based on duty of good faith and fair dealing based on the alleged violation of a federal statute where the statute did not create a private cause of action).

Accordingly, Defendants' motion to dismiss is granted, and because amending would be futile, Plaintiff's breach of contract claims are dismissed with prejudice.

        d.  <u>Unreasonable Restraint of Trade</u>

MillerCoors next argues that there is no independent cause of action for "unreasonable restraint of trade" in Pennsylvania and from the conclusory allegations of Plaintiff's complaint it is unclear whether it is alleging a contractual argument for voiding MillerCoors' proposal or if it is alleging a common law antitrust claim against MillerCoors. Br. in Supp. of Mot. to Dismiss [ECF No. 26] at 14.

Plaintiff states that it is not alleging a common law antitrust claim, but rather argues that it is "entitled to conduct their business without interference from unreasonable restraint on trade." Br. in Op. of Mot. to Dismiss [ECF No. 30] at 18.

As an initial matter, because Plaintiff states that it is not proceeding with a common law antitrust claim, this will not be discussed. Apparently, Plaintiff is claiming that MillerCoors unreasonably restrained Plaintiff's trade by enforcing specific contract provisions in violation of section 4-492(21) of the Liquor Code. As explained extensively *supra*, section 4-492(21) does not create a private right of action, therefore a claim for unreasonable restraint of trade based exclusively on that section must be dismissed with prejudice. To the extent that Plaintiff argues that MillerCoors' actions in enforcing and carrying out the Distribution Agreement was an unreasonable restraint of trade, Plaintiff has not alleged any explicit provisions it considers unreasonable. Moreover, the type of conduct that is complained of is outside of the scope of this

doctrine. The doctrine, as it is purportedly being applied by Plaintiff, governs the enforceability of a restrictive covenant in a contract, and is not a separate cause of action. Tellingly, Plaintiff has pointed to no authority that supports a finding that unreasonable restraint of trade is a separate cause of action. *Harris Calorific Co v. Marra*, 29 A.2d 64, 65 (Pa. 1942) relied upon by Plaintiff, is inapposite as it determined whether a non-compete clause in a contract was enforceable or constituted an illegal restraint of trade. Additionally, *Alarmax Distrib. Inc. v. Tyco Safety Prod. Canada Ltd*., 2008 WL 2622899, at *4 (W.D.Pa. June 27, 2008) also relied upon by Plaintiff for the proposition that a court can administer injunctive relief for unreasonable restraints on trade is also inapposite because the claim was based on a private anti-trust cause of action, expressly dismissed by Plaintiff.

Accordingly, Defendants' motion to dismiss Plaintiff's unreasonable restraint of trade claim is granted and this claim is dismissed with prejudice as amending would be futile as there is no private right of action for an "unreasonable restraint of trade" in the context that Plaintiff would have this court apply it.

e. Tortious Interference with Existing Contract

Plaintiff alleges that MillerCoors has tortuously interfered with the contract between it and Anheuser-Busch by requiring Plaintiff to create a separate corporate entity to distribute new craft beers. Compl. [ECF No. 22] at ¶ 78.

MillerCoors seeks to dismiss this claim because the proposal has been withdrawn and is not an actual case or controversy for a tortious interference with contract claim and even if the proposal was still available, Plaintiff fails to state a claim because "(1) Pennsylvania has not recognized the type of tortious interference Plaintiff alleges, (2) the conduct alleged by Plaintiff does not satisfy the elements of tortious interference, and (3) . . . MillerCoors' actions were

directed at protecting a legitimate business interest." Br. in Supp. of Mot. to Dismiss [ECF No. 26] at 16-17.

Plaintiff responds that MillerCoors "tortuously interfered with [its] existing contract with Anheuser-Busch when they demanded that Fuhrer either cease selling Anheuser-Busch products or carve up the company into pieces it would no longer control." Br. in Op. of Mot. to Dismiss [ECF No. 30] at 20.

To state a claim for tortious interference with contractual relations under Pennsylvania law, a plaintiff must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) the purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997); *see also Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000). "To establish a claim for tortious interference with existing contract, plaintiffs must prove that the defendants intentionally and improperly interfered with their performance of contracts with third persons." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994) (citing *Nathanson v. Med. College of Pennsylvania*, 926 F.2d 1368, 1388 (3d Cir. 1991)).

Plaintiff seems to be arguing that MillerCoors' conduct somehow tortuously interfered with the distribution contract between it and Anheuser-Busch.[2] However, the complaint fails to

---

[2] To the extent that Plaintiff argues that MillerCoors' conduct tortuously interfered with the distribution agreement between it and MillerCoors, such a claim is not recognized in Pennsylvania. *See Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994) (the Restatement (Second) of Torts section 766A addressing tortious interference with contractual relations by disruptions caused by an act directed at the plaintiff are not specifically recognized by Pennsylvania law); *Windsor Sec. Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655 (3d Cir. 1993) (same).

allege how MillerCoors interfered with the performance of the Distribution Agreement between Anheuser-Busch and Plaintiff. Plaintiff for the first time in its response to the motion to dismiss alleges that MillerCoors demanded that Plaintiff cease selling Anheuser-Busch products. Regardless of whether this statement is true, Plaintiff has pled no facts that MillerCoors intended to harm the relationship between Plaintiff and Anheuser-Busch, or that MillerCoors did so in the absence of a privilege or justification for doing so, or that Plaintiff suffered damages from not selling Anheuser-Busch products. To the contrary, Plaintiff alleges that it still distributes Anheuser-Busch products and does not allege that it ever ceased its operations with Anheuser-Busch.

Accordingly, Defendants' motion to dismiss is granted and Plaintiff's claim for tortious interference with existing contract is dismissed.

## VI.     CONCLUSION

Defendants' motion to dismiss is granted as set forth above. Accordingly, the pending motion for preliminary injunction, the motion for oral argument and request for declaratory relief are dismissed as moot, and the preliminary injunction hearing scheduled for November 4, 2013 is cancelled. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK B. FUHRER WHOLESALE COMPANY, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | Civil Action No. 13-1155 |
| MILLERCOORS LLC, COORS BREWING COMPANY and MOLSON COORS BREWING COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**O R D E R**

AND NOW, this 30th day of October, 2013, after consideration of Defendants' Motion to Dismiss [ECF No. 25] and Brief in Support [ECF No. 26], Plaintiff's Brief in Opposition [ECF No. 30] and Defendants' Reply [ECF No. 35], it is HEREBY ORDERED as follows:

Defendants' Motion to Dismiss [ECF No. 25] is granted;

Plaintiff's request for injunctive and declaratory relief is dismissed as moot;

Defendants' request for oral argument on the motion to dismiss [ECF No. 33] is dismissed at moot;

The preliminary injunction hearing scheduled for November 4, 2013 is cancelled.

By the Court,
s/Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

cc: all counsel of record via CM/ECF electronic filing